UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

RICHARD BOHN                                  CIVIL ACTION

VERSUS                                        NO. 11-610

LQ MANAGEMENT D/B/A                           MAGISTRATE JUDGE
LA QUINTA INNS AND SUITES                     JOSEPH C. WILKINSON, JR.

## ORDER AND REASONS ON MOTION

In this employment discrimination case, plaintiff Richard Bohn alleges that his former employer, LQ Management d/b/a La Quinta Inns and Suites ("La Quinta"), terminated his employment in retaliation for his having taken authorized medical leave, in violation of the Family Medical Leave Act (the "Act"). 29 U.S.C. § 2601 et seq. Defendant has filed a Motion for Summary Judgment. Record Doc. No. 38. Bohn filed a timely opposition memorandum. Record Doc. No. 45. La Quinta received leave to file a reply memorandum. Record Doc. Nos. 55, 58, 59. Bohn received leave to file a memorandum in opposition to defendant's reply memorandum. Record Doc. Nos. 57, 62, 63. Oral argument was conducted on May 23, 2012. For the following reasons, IT IS ORDERED that the motion is DENIED.

> The [Act] entitles eligible employees to twelve work-weeks of leave in any 12-month period for various qualifying events, including a "health condition that makes the employee unable to perform the functions" of his position. 29 U.S.C. § 2612(a)(1)(D). . . . The [Act] also "protects employees from interference with their leave as well as against discrimination or retaliation for exercising their rights." An employer's prohibited discrimination or retaliation gives rise to a claim under 29 U.S.C. § 2615(a)(2).

McArdle v. Dell Prods., L.P., 293 F. App'x 331, 334 (5th Cir. 2008) (quoting Bocalbos

v. Nat'l W. Life Ins. Co., 162 F.3d 379, 383 (5th Cir. 1998)) (citing Haley v. Alliance

Compressor LLC, 391 F.3d 644, 649 (5th Cir. 2004)).

> Retaliation claims under the [Act] are analyzed using the McDonnell
> Douglas burden-shifting framework.  To make a prima facie case of
> retaliation under the [Act], the plaintiff must show that:  "(1) she was
> protected under the [Act]; (2) she suffered an adverse employment
> decision; and either (3a) that she was treated less favorably than an
> employee who had not required leave under the [Act]; or (3a) the adverse
> decision was made because [s]he took [Family Medical Leave Act] leave."
> Once the plaintiff makes a prima facie showing, the burden shifts to the
> defendant "to articulate a legitimate nondiscriminatory or nonretaliatory
> reason for the employment action."  If the defendant makes such a showing,
> the plaintiff "must show by a preponderance of the evidence that [the
> defendant's] reason was a pretext for retaliation."

Id. at 334-35 (quoting Hunt v. Rapides Healthcare Sys., LLC, 277 F.3d 757, 768 (5th Cir.

2001)); accord Mauder v. Metro. Transit Auth., 446 F.3d 574, 580 (5th Cir. 2006).

Conceding solely for purposes of the pending motion that Bohn can establish the

first and second prongs of a prima facie case of retaliation under the Act, La Quinta

argues that he cannot satisfy the third, causation prong because he has no evidence to

prove either that a similarly situated person was treated less favorably than he or that his

employment was terminated because he took medical leave.  La Quinta's evidence shows

that, during Bohn's leave, an employee named Charlene Maguill complained to Bohn's

supervisor, Regional Vice President Rob Cowan, and to Sue Millard, the Field Human

Resources Manager for the region, that Bohn had asked Maguill to work off the clock

and had paid her out of his own pocket for that time. Such conduct, if it occurred, violated defendant's policy against both asking employees to work off the clock and paying them to do so in order to avoid paying overtime pay. Millard investigated Maguill's allegations and found them credible, but was unable to prove them conclusively from the available documentation.

When Bohn returned to work on October 4, 2010, Millard and Cowan jointly questioned plaintiff about Maguill's allegations. Bohn denied that he had paid Maguill for working off the clock. However, La Quinta terminated his employment <u>that day</u> for the stated reason that he had "admitted" during the interview "to asking and paying another hourly breakfast bar employee to work off the clock." Declaration under penalty of perjury of Sue Millard, Record Doc. No. 38-5, Defendant's Exh. D, ¶¶ 15-16; <u>accord</u> deposition of Sue Millard, Record Doc. No. 38-4, Defendant's Exh. C at p. 264; <u>see also</u> deposition of Rob Cowan, Record Doc. No. 38-4, Defendant's Exh. B at pp. 321-22 (Bohn admitted to Cowan and Millard during the October 4th meeting that he had both asked and paid a breakfast bar attendant named Jackie to work off the clock); Performance Management Form, Record Doc. No. 38-5, Defendant's Exh. 4 to Millard's declaration (La Quinta documentation that plaintiff's employment was terminated because he "admitted that he on occasion would have employees clock out, continue working, and pay them cash for their time after clocking out in order to avoid overtime").

The summary judgment record does <u>not</u> establish a set of undisputed material facts on which it can be determined as a matter of law that plaintiff will be unable to prove a prima facie case of retaliation. Bohn has produced competent summary judgment evidence, consisting of his own sworn deposition testimony, that he did <u>not</u> pay anyone to work off the clock, which contradicts defendant's allegations that he admitted having done so. <u>See</u> deposition of Richard Bohn, Record Doc. No. 45-2, Plaintiff's Exh. A at p. 173 (plaintiff told Millard and Cowan on October 4, 2010 "that I don't remember paying anybody out of my pocket"); <u>id.</u> at p. 195 ("Q:  In your entire career with La Quinta, have you ever paid any employee, or given any employee, anything of value for working off the clock?  A:  <u>No</u>; I don't recall ever doing that.") (emphasis added); <u>id.</u> at pp. 200-01 (admitting that, at an unspecified time, he "might have talked with" an employee named Christie Smith about paying her off the clock, but <u>not</u> saying that he ever paid her to do so).

Plaintiff has proffered additional testimony from which an inference might be drawn that Cowan had some animus towards him, as a General Manager, for taking medical leave at that particular time.  Bohn deposition, Record Doc. No. 45-2, Plaintiff's Exh. A at pp. 174-75.  Bohn also points to evidence from which a factfinder could conclude that employees at several other hotels under Cowan's supervision had numerous instances of working off the clock, without the General Managers at those hotels having been fired for that reason. Cowan deposition, Record Doc. No. 45-3,

Plaintiff's Exh. B at pp. 261-84, 294-305; Millard deposition, Record Doc. No. 45-4, Plaintiff's Exh. F at pp. 153-91, 236-42; Record Doc. No. 45-6.

"Analogous cases have held that such evidence is sufficient to establish retaliatory causation."  McArdle, 293 F. App'x at 338-39 (citing Rachid v. Jack in the Box, Inc., 376 F.3d 305, 313 (5th Cir. 2004); Shackelford v. Deloitte & Touche, LLP, 190 F.3d 398, 409 (5th Cir. 1999); Hodgens v. Gen. Dynamics Corp., 144 F.3d 151, 165 (1st Cir. 1998)).  Particularly when viewed in light of the possibly corroborating, temporally proximate, same-day termination of plaintiff's employment immediately upon his return to work after taking medical leave, Bohn has proffered enough competent evidence establishing that material fact issues remain to be resolved at trial to defeat summary judgment.  See Baumeister v. AIG Global Inv. Corp., 420 F. App'x 351, 356 (5th Cir. 2011) (quoting Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001)) (when considered in conjunction with other pretext evidence, a "'very close'" "temporal proximity between [Family Medical Leave Act]-protected leave and a subsequent termination may be sufficient evidence of pretext"); Shackelford, 190 F.3d at 409 ("[T]he combination of suspicious timing with other significant evidence of pretext, can be sufficient to survive summary judgment.").

"Whether [plaintiff's] allegations are too vague to ultimately carry the day is a credibility determination, or requires weighing the evidence, both of which are more appropriately done by the trier of fact."  Harvill v. Westward Commc'ns, L.L.C., 433

F.3d 428, 436 (5th Cir. 2005) (citations omitted); see also Anderson v. Liberty Lobby,
477 U.S. 242, 255 (1986) ("Credibility determinations, the weighing of the evidence, and
the drawing of legitimate inferences from the facts are jury functions, not those of a judge
. . . [when] ruling on a motion for summary judgment . . . .  The evidence of the
non-movant is to be believed, and all justifiable inferences are to be drawn in his
favor."); Hebert v. Rodriguez, 430 F. App'x 253, 255 (5th Cir. 2011) (quotations
omitted) ("The determination of a witness's credibility lies at the core of a jury's
factfinding function and is not the province of judges."); Deville v. Marcantel, 567 F.3d
156, 165 (5th Cir. 2009) (quotation omitted) ("Summary judgment is not appropriate
when questions about the credibility of key witnesses loom . . . large . . ."). These are
matters for the jury to determine at trial.

For the foregoing reasons, **IT IS ORDERED** that defendant's motion for
summary judgment is **DENIED**.

New Orleans, Louisiana, this _____23rd_____ day of May, 2012.


JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

6